IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **NICOLE LEIGH DOTSON** | ) | CASE No. 05-71314-WSB |
| | ) | |
| Debtor. | ) | CHAPTER 13 |
| | ) | |

## MEMORANDUM DECISION

The matter currently before the Court is the Motion to Sell Real Estate Encumbered by First Deed of Trust and Apply Net Proceeds to Balance on Second Deed of Trust (hereafter referred to as "Motion to Sell") filed August 5, 2005 by the Debtor. The Debtor seeks permission to sell free and clear of liens certain real estate located in Wise County, Virginia, and to use the proceeds to pay down the balance on her second deed of trust. First Community Bank, N.A., the lienholder of the first deed of trust, filed an objection to the Motion to Sell on August 25, 2005. A hearing was held on the Motion to Sell on September 6, 2005. The Court took the matter under advisement and requested written argument from counsel regarding whether the sale could be compelled under either 11 U.S.C. § 363 or § 1325. Both parties have since submitted written arguments to the Court. The matter is now ready for decision by this Court.

For the reasons set forth below, the Court concludes that the Debtor's Motion to Sell should be denied.

FINDINGS OF FACT

The Debtor filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on April 7, 2005. On August 5, 2005, the Debtor filed a motion to sell free and clear of liens certain real estate and to use the proceeds to pay down the balance on a second deed of trust. The Debtor is the owner of two tracts of real estate on Bold Camp Road in Wise County, Virginia; the first tract containing 12.582 acres and the second tract containing .881 acres. The Debtor asserts that the first tract is the Debtor's principal residence and the second tract is a noncontiguous tract that is not the Debtor's principal residence. First Community Bank does not concede that the second, noncontiguous tract is not a portion of the Debtor's principal residence.

First Community Bank (hereafter referred to as the "Bank") has a recorded first deed of trust on both pieces of property. The payoff on that debt at the time of the filing of the petition was $53,987.22. GMAC Mortgage has a second deed of trust on both pieces of property. The Debtor asserts that the payoff on the debt owed to GMAC at the time of the filing of the petition was $25,770.99. The Debtor further asserts that the total appraised value of the two tracts of land is approximately $130,000.00, with the larger tract representing approximately 90% of the total value. The Debtor's Chapter 13 plan proposes that the smaller tract of land be sold and the proceeds of that sale be paid directly to GMAC. The Debtor asserts that a bona fide offer to purchase the noncontiguous property for $11,600.00 has been received, an amount in excess of the appraised value of $9,500.00.

The Bank filed an objection to the Motion to Sell on August 25, 2005 asserting that the debtor cannot sell the property free and clear of the interest of the Bank because none of

2

the alternative grounds of section 363(f), subparagraphs 1 - 5, has been satisfied. The Bank maintains that the effect of the sale would be to deprive the Bank of adequate protection of its interest and to limit its right to avoid confirmation of a plan that impairs its interest secured by the residence of the debtor. The Bank also maintains that the Court does not have the legal authority to sell its collateral free and clear of liens under 11 U.S.C. § 1325. The Debtor asserts that because the Bank is substantially oversecured, even without the lien on the noncontiguous tract proposed for sale, and the noncontiguous tract is not the Debtor's principal residence, the Bank has no grounds to object and that such proposed sale without the Bank's consent is an authorized modification of the latter's security rights under 11 U.S.C. § 1322(b)(2).

## CONCLUSIONS OF LAW

### Jurisdiction

This Court has jurisdiction of this proceeding by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984. A motion to sell property owned by a bankruptcy debtor is a "core" bankruptcy matter pursuant to 28 U.S.C. § 157(b)(2)(N).

### 11 U.S.C. § 363 Analysis

The Debtor seeks court approval not only for the sale of property, but also for an order that would permit the property to be transferred free and clear of all liens against it. Such a sale free and clear of a lien or other interest in the property is permissible under the Bankruptcy Code only in five situations. Pursuant to 11 U.S.C. § 363(f),

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.[1]

In this case, applicable nonbankruptcy law does not permit the sale of the property free and clear of such liens.  Second, the Bank does not consent to such action.  Third, the price at which the property is to be sold is not greater than the aggregate value of all liens on the property.  Next, the interest in this case is not in bona fide dispute.  Finally, subsection (5), which concerns a compelled money satisfaction of an interest, refers to a situation where there are sufficient proceeds to satisfy the particular interest.

The Debtor asserts that under 11 U.S.C. § 1303, a chapter 13 debtor has the right to sell property under § 363 (b), (d), (e), (f) and (l).   The Debtor argues that under § 363(e), on request of any entity, the court may prohibit or condition the sale of property, but only as is necessary to provide adequate protection of such interest. The Debtor maintains that even with the removal of the Bank's lien after the sale of the noncontiguous property, the Bank's lien interest in Debtor's property will continue to be adequately protected given that the Bank will be oversecured and enjoy an equity cushion of over $64,000 on the 12.582 acre tract.  Therefore,

---

[1] Pursuant to 11 U.S.C. § 1303, "[s]ubject to any limitations on a trustee under this chapter, the debtor shall have, exclusive of the trustee, the rights and powers of a trustee under sections 363(b), 363(d), 363(e), 363(f) and 363(l), of this title."

4

the Debtor argues, the Bank has no basis upon which to object to the sale of the noncontiguous property under § 363.

Regardless of whether the Bank is adequately protected, none of the permissible grounds under § 363(f) has been established. Therefore, the Court concludes that a sale of the property under 11 U.S.C. § 363 is not permissible.

## 11 U.S.C. § 1322 and § 1325 Analysis

The Debtor argues that the proposed sale and proposal to apply the proceeds to pay down the second deed of trust complies with the requirements of 11 U.S.C. § 1322 as the plan proposes no changes in the repayment of the Bank's debt and the Bank's lien continues to be oversecured, even with the sale of the noncontiguous tract of land. The Debtor argues that the proposed modification of the Bank's security interest in the second tract of land is consistent with § 1322(b) because the second tract of land is not the Debtor's principal residence and is not entitled to the protections of § 1322(b)(2). The Bank argues that the Debtor's arguments fail to address the provisions of section 1325, which must be met before the plan can be confirmed.

11 U.S.C § 1322(b)(2) provides that the plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence." In this case, there is a dispute regarding whether the claim is secured only by interest in property that is the debtor's personal residence. For purposes of this decision only, the Court will assume, without deciding, that the second tract of land is not the Debtor's principal residence and that under section 1322, it is permissible for the Debtor to modify the rights of the Bank. "Once a creditor is found to be the holder of a secured claim

[other than one secured solely by real property constituting the principal residence of the debtor], the [chapter 13] debtor may modify terms such as the amount of the payments on the claim, the timing of payments and finance charges . . . ." 8 Collier on Bankruptcy ¶ 1322.06[1] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.). "With respect to claims secured by any property other than a principal residence, this very significant power [to modify the rights of holders of secured claims] allows debtors to change contract terms by altering interest rates and monthly payments, by changing the length of the repayment period, by changing the total amount to be repaid and by modifying acceleration and default provisions." 2 Keith M. Lundin, Chapter 13 Bankruptcy, 3d Ed. § 104.1 (2000 & Supp. 2004). Modification of a secured creditor's rights under § 1322(b)(2) is not without limitation, however. "The extent to which the chapter 13 plan may modify the rights of the holder of a secured claim and still be confirmed depends upon the application of section 1325(a)(5) in each particular case." Collier, *supra*, ¶ 1322.06[1]. 11 U.S.C. § 1325(a) provides that "the court shall confirm a plan if – . . . (5)(B)(i) the plan provides that the holder of such claim retain the lien securing such claim." Unless a secured creditor accepts a chapter 13 plan, the plan must provide that the secured creditor retain the lien securing the creditor's secured claim.

The Bank argues that case law construes § 1325 to prohibit a debtor from selling collateral of a secured creditor, even an oversecured creditor, to fund other aspects of his plan. The Court agrees. In *In re Litton*, 36 B.R. 660 (Bankr. M.D. Tenn 1984), the court denied confirmation of the debtors' Chapter 13 plan because the plan failed to retain the creditor's lien in its collateral consisting of a third party note, even though the evidence showed that the bank was oversecured and adequately protected. A chapter 13 plan may not "provide for the sale of

part of the property securing a claim to obtain funds to pay other creditors without the claim holder's acceptance." Collier, *supra*, ¶ 1325.06[3][a], (citing *In re Hink*, 81 B.R. 489 (Bankr. W. D. Ark. 1987)). The court in *In re Hink* considered whether a chapter 13 plan could be confirmed where the plan did not propose that the secured creditor retain its lien. In denying confirmation of the plan, the Court stated:

> The provisions of Section 1325(a)(5)(B)(i) are clear – a secured creditor must retain the lien securing its claim in order for a plan to be confirmed, even if the debtors propose to continue payments as required in the notes and mortgage evidencing the indebtedness. Therefore, even if Section 1322(b)(2) allows a modification of the Bank's rights, the modification is not acceptable under Section 1325(a)(5)(B)(i).

*In re Hink*, 81 B.R. at 491.

The Debtor relies on 11 U.S.C. § 1225 and *Abbott Bank-Thedford v. Hanna (In re Hanna)*, 912 F.2d 945 (8th Cir. 1990) in further support of her position. The Debtor's reliance on *In re Hanna* is misplaced, however. *Hanna* is limited to its circumstances; it only speaks to the unique situation in which the collateral at issue is livestock. The principal issue before the court in *Hanna* was whether the lien retention language of 11 U.S.C. § 1225(a)(5)(B)(i) must be applied literally in the case of livestock operations. The *Hanna* court rejected a literal interpretation of that section in situations involving livestock because to do so would produce "a result directly at odds with congressional intent." and prevent the confirmation of any plan in which the debtor's primary source of income was generated through the sale of livestock. *Id.* at 950. The *Hanna* court specifically noted that Chapter 13's lien retention provision, which is substantially similar to its counterpart in Chapter 12, has been strictly construed, citing *In re Hink* and *In re Litton*. *Id.* at 949. *Hanna* does not apply to this case as this case does not involve livestock. This Court will strictly construe the provisions of § 1325 according to its plain, literal

meaning – a secured creditor must retain the lien securing its claim in order for the plan to be confirmed unless such creditor expressly consents otherwise.

The Debtor's plan in this matter does not retain the lien securing the Bank's claim against all of its collateral. Therefore, the proposed chapter 13 plan cannot be confirmed by the Court in the absence of agreement of such proposal by the Bank. Based upon the above authorities, it is clear that a Chapter 13 debtor cannot modify the mortgagee's rights by releasing part of its collateral over its objection and paying the sale proceeds to a junior lien creditor.

## CONCLUSION

Based upon the above authorities, the Court concludes that the Debtor may not sell free and clear of liens this real estate and apply the net proceeds to pay down the balance on the second deed of trust under either 11 U.S.C. § 363 or § 1325, without First Community Bank's consent. Accordingly, the Court will deny the Debtor's Motion to Sell to the extent that it seeks the power of this Court to sell a portion of her real property free and clear of the first deed of trust lien of First Community Bank. It is not within this Court's authority to deprive the Bank of a part of its collateral even though the Debtor or even the Court might perceive the Bank's stance as unreasonable considering the value of the remaining collateral and the likely improvement of the Debtor's financial condition which would likely result if such sale were to be effected. An order to such effect will be entered contemporaneously with the signing of this Decision.

This 10th day of November, 2005.

_____
UNITED STATES BANKRUPTCY JUDGE